UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14002-CR-ROSENBERG/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NATASHIA DENISE THAMES,

    Defendant.
_____/

**MEMORANDUM REGARDING DEFENDANT NATASHIA THAMES'
POSITION REGARDING DIBUTYLONE**

COMES NOW the defendant, Natashia Denise Thames by and through her undersigned counsel, files the following memorandum regarding dibutylone and states:

**PROCEDURAL HISTORY**

1. Ms. Thames pled guilty to Conspiracy to Import a Controlled Substance-Dibutylone HCl (Count One); Conspiracy to Manufacture, Possess with Intent to Manufacture and Distribute a Controlled Substance- Dibutylone (Count Two); and Possession with Intent to Distribute Dibutylone (Count Three). The case is presently scheduled for sentencing.

2. The Presentence Investigation Report (PSI) concluded that the most closely related controlled substance to dibutylone is MDMA. Pursuant to § 2D1.1, comment (n.8(D)), one gram of MDMA is equivalent to 500 grams of marijuana.

Therefore, the defendant is responsible for the equivalent of 3,074.3 kilograms of marijuana (6,148.6 grams x 500 grams). The probation officer makes this conclusion based on the opinion of the Drug Enforcement Agency.

3. On February 6, 2017, this Court entered a paperless order setting deadline and requiring the parties to file a memorandum with respect to evidence and ratio for dibutylone HCI and Ethylone[1]. (DE 219).

4. The Court heard testimony from the government's experts and defense experts on January 31, 2017 and February 1, 2017 for this Court to determine what substances listed in U.S.S.G. § 2D1.1, are most closely related to dibutylone.

## MEMORANDUM

The U.S. Sentencing Guidelines provide a procedure for assigning a "marijuana equivalency ratio" for drugs not specifically listed in the Guidelines document where the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline is utilized. The applicable section of U.S. Sentencing Guideline states as follows:

> In the case of a controlled substance that is not specifically referenced in this guideline, determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline. In determining the most closely related controlled substance, the court shall, to the extent practicable, consider the following:
>
> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

---

[1] Undersigned submits this Sentencing Memorandum addresses dibutylone and not the other controlled substance of ethylone, as specified in this Court's Status Order. Ms. Thames was only charged with dibutylone.

2

>   (B)  Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
>   (C)  Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

U.S.S.G. 2D1.1, commentary note 6 (2016).

Undersigned's position for the applicable ratio for dibutylone is outlined in this memorandum as well as the evidence in respect to dibutylone.

## **Chemical Structure**

The government's expert, Dr. Willenbring, testified that, in his opinion, dibutylone is closest in structure to MDMA. (DE211:43-49). However, with the alpha position, specifically the alkyl group, a difference exists. They are both alkyl groups, but MDMA has a single carbon there known as the methyl, and dibutylone has two carbons known as an ethyl. Sent. Trans. Volume I at 45. For the nitrogen substitution. MDMA has one carbon group at that position, one methyl group, and in dibutylone, there are two carbon groups on that nitrogen. (DE211:46). Dr. Willenbring opined that that the difference was not significant. The defense expert, Dr. Gregory Dudley, opined that the change from the methylene to the ketone is significant. Further, Dr. Dudley would classify dibutylone with cathinones and MDMA with amphetamines. (DE211:204). In contrast. dibutylone has no atom hydrogen attached. It could engage in hydrogen bonding by an alternative

3

mechanism, MDMA also can, but the second group blocks dibutylone to donate a hydrogen bond. So, in that regard, dibutylone is not substantially similar to MDMA also. (DE211:205). To conclude, Dr. Dudley opined that the most closely related chemical structures are, methcathinone, cathinones, pyrovalerone, diethylpropion and diethyl amphetamine. (DE211:6-16).

**Pharmacological Effect**

As a starting point, Dr. DeCaprio opines that the determination required under (Step "B") above is intended to address pharmacological effect (*i.e.*, what specific central nervous system responses are produced by the drug), whereas the determination required under (Step "C") above is intended to address pharmacological potency (*i.e.*, what dose of the drug is required to produce the specific central nervous system responses). Also, the phrase "substantially similar" about pharmacological effect or potency is neither generally accepted nor widely employed by pharmacologists and other scientists tasked with assessing the effects of drugs in humans, but there are major interpretive issues with the phrase. The definition of "substantially similar" is even more problematic than trying to define what is meant by "substantially similar" with regard to chemical structure. This is because each drug molecule has only one chemical structure (at least at the two-dimensional level) to consider. In contrast, each drug molecule will have its own unique set of pharmacological properties based on the multiple endpoints that can be measured (*e.g.*, receptor binding, agonist activity, drug discrimination specificity and potency). So, for a pair of drugs, data for one endpoint might be "similar" for

4

both drugs (*i.e.,* meaning, to the scientist, not significantly different) whereas data for another might be dissimilar (*i.e.,* meaning, to the scientist, significantly different). Alternatively, for a pair of drugs, one drug may exhibit a greater effect (*i.e.,* greater potency) than the other for one measured endpoint but a lower potency for a second effect.

In conclusion, an appropriate, scientifically acceptable approach to assessing the similarity in pharmacological action between two drugs ideally includes rigorous statistical analysis of all available data from *in vitro, in vivo*, and most importantly, controlled human studies, with the goal of generating a high confidence similarity metric based on the data. There is simply no substitute for such an approach in addressing the questions posed in Steps "B" and "C" of the assessment.  Another consideration in evaluating the scientific validity of pharmacological comparisons done under Sentencing Guidelines determinations is that it is impossible to predict pharmacological effects and relative potencies of drugs in humans with a high degree of confidence based on *in vitro* or animal data alone.  Government pharmacological evaluations of possible analogue drugs as currently performed are based primarily on the results of *in vitro* ("test tube") and *in vivo* (live animal) experiments.  Steps "B" and "C" of the marijuana equivalency determination for sentencing purposes as currently written does not represent an objective, reliable, and scientifically-based approach to predicting the relative potency and pharmacological effect of an untested compound in comparison to a listed substance. Furthermore, procedure is flawed, in that it sets a standard that

5

cannot be satisfied in the absence of reliable human data. *In vitro* and animal models alone are insufficient to predict with a high level of confidence the possible central nervous system stimulant, depressant, or hallucinogenic effects of novel compounds in humans.

In looking at the testimony, Dr. Jordan Trecki, the government's pharmacological expert, opined that the pharmacological effects of dibutylone are likely to be substantially similar, and stimulus effects, as compared to MDMA. (DE211:102). Dr. DeCaprio, defense expert, opined that MDMA is five times as potent as methylone. Ethylone is likely to be the same potency as methylone, or possibly somewhat less. Further, he opined the same estimate for butylone as ethylone. (DE212:105). The government is relying on the unpublished Janowsky report on dibutylone. Dr. DeCaprio explain. Dr. DeCaprio stated that MDMA was not concurrently studied with dibutylone. (DE212:106). In that study, researchers compared dibutylone to cocaine, methamphetamine and mazindol. Dr. DeCaprio believes that cocaine and methamphetamine were compared with dibutylone for the binding and re-uptake. Inhibition end point and only methamphetamine was included in the neurotransmitter release assays. (DE212:107). It is important for the same two drugs to be compared in an experiment for pharmacological similarities. Per Dr. Caprio, the most reliable way to do these assays is to compare whatever you want to compare in that single assay at the same time. (DE212:107).

To conclude, Dr. DeCaprio believes that no drugs listed in U.S.S.G. are substantially similar to dibutylone. Notably, dibutylone may be pharmacologically

similar to MDMA but not "substantially similar". (DE212:112). The final step in assessment for purposes of selecting an appropriate comparator drug for sentencing consideration (Step "C") involves determination of relative pharmacological potency. Relevant data for MDMA, methylone, ethylone, and butylone exists; however, no such data are available for dibutylone. The available data for ethylone, butylone, and dibutylone are too limited to make firm conclusions regarding their relative pharmacological potency in comparison to either methylone or MDMA. However, estimates have been made that the recreational dose of ethylone and butylone in humans is similar to that of methylone, suggesting that a relative potency ratio of 5:1 in comparison to MDMA would also be reasonable. As with methylone, this assumption would result in a marijuana equivalency ratio no higher than 100:1 for each of these compounds.

Accordingly, an opinion was rendered by Dr. DeCaprio regarding the appropriate marijuana equivalency ratio for dibutylone for purposes of sentencing determination. The applicable ratio should be no more than 100:1.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

By:   *s/ Panayotta Augustin-Birch*
       Panayotta Augustin-Birch
       Assistant Federal Public Defender
       Florida Bar No. 359970
       109 North Second Street
       Fort Pierce, Florida 34950
       Tel: 772-489-2123
       Fax: 772-489-3997
       E-Mail: panayotta_augustin-birch@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on February 17, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By:  *s/Panayotta Augustin-Birch,* AFPD
            Panayotta Augustin-Birch

## SERVICE LIST

### UNITED STATES v. NATASHIA DENISE THAMES
### Case No. 16-14002-CR-ROSENBERG/THAMES
### United States District Court, Southern District of Florida

**Panayotta Augustin-Birch**
**Assistant Federal Public Defender**
109 North Second Street
Fort Pierce, FL 34950
Tel: 772-489-2123
Fax: 772-489-3997
Email: panayotta_augustin-birch@fd.org
Notices of Electronic Filing

**Carmen M. Lineberger**
**Assistant United States Attorney**
United States Attorney's Office
101 South U.S. Hwy 1, Suite 3100
Fort Pierce, Florida 34950
Tel:  772-293-0944
Fax: 772-466-1020
Email: carmen.lineberger@usdoj.gov
Notice of Electronic Filing

**Jonathan S. Friedman**
1 East Broward Boulevard
Suite 925
Fort Lauderdale, Florida 33301
Tel: 954-713-2820
Fax: 954-713-2894
Email: JFriedmanlawfirm@gmail.com
Notice of Electronic Filing

**Julie Prag Vianale**
Vianale & Vianale
5550 Glades Road
Suite 500
Boca Raton, Florida 33431
Tel: 561-392-4750
Fax: 561-961-5191
Email: jvianale@vinalelaw.com
Notice of Electronic Filing