UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION
Case No. 16-14002-CR-ROSENBERG/LYNCH

_____

UNITED STATES OF AMERICA,

-v-

VENTERIA LEANET REASON,

Defendants.

_____

DEFENDANT VENTERIA LEANET REASON'S *REDACTED* MOTION FOR
DOWNWARD VARIANCE AND INCORPORATED MEMORANDUM OF LAW

Defendant Venteria Leanet Reason respectfully submits this Motion and incorporated

Memorandum of Law in support of a request that the Court grant a downward variance.  Ms.

Reason is deeply sorry that she involved herself in this offense.  She is determined to reform her

life, and every day she remains in jail is a terrible punishment for her and her three children.

Were the Court looking only at Ms. Reason's personal circumstances, we believe there would be

a strong argument for a sentence of time served.  However, we recognize that the Court must

also consider the serious nature of the offense to which she has pleaded guilty. In recognition of

this and all the § 3553(a) factors, we ask that the Court impose the shortest sentence possible, but

not one exceeding 48 months, followed by a period of supervised release.

Venteria Reason's case presents a strong case for mercy. Ms. Reason is a first offender

with zero Criminal History Points and a Sentencing Guidelines Criminal History Category of I.

She has accepted responsibility for assisting her husband, Julius Reason, in the offenses charged

in this case. The Pre-Sentence Investigation Report ("PSR") accurately describes her role as

"assisting" Mr. Reason. PSR ¶ 53.  Ms. Reason's life story of struggle and sadness, and the

1

emotional wounds that caused her, provides a mitigating explanation for her willingness to become involved in this conduct. She longs to be reunited with her three young children, for whom she has been a loving mother. They are suffering without her.

The Sentencing Commission has not established guidelines for dibutylone or ethylone. Because the Commission has not undertaken its evaluative process to determine an offense level for these substances, the Court has greater than usual latitude to disregard the Sentencing Guidelines and base its sentence on the overarching instruction of 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in [18 U.S.C.] § 3553(a)(2)." *See Kimbrough v. United States*, 552 U.S. 85, 108-109 (2007). Insofar as the Court wants to look to the Guidelines, there are strong grounds for downward variance in this case.

**Procedural Background**

Venteria Reason is before the Court following her guilty plea to Count One of the Superseding Indictment, which charges her with conspiracy to import a controlled substance, dibutylone HCl, in violation of 21 U.S.C. § 963. Ms. Reason was arrested on March 11, 2016. She was released on electronic monitoring on March 16, 2016. Ms. Reason remained at liberty, holding down two jobs until she was remanded on September 21, 2016 following her guilty plea. Ms. Reason has been in custody since September 21, 2016 awaiting sentencing.

**Attachments to this Memorandum**

We attach to this memorandum in further support of leniency the following Exhibits:

Exhibit 1:    Ten letters of support from Ms. Reason's family and friends;

Exhibit 2:    Sworn Declaration of Ms. Reason's aunt Octavia Curtis, providing information regarding Ms. Reason's three children;

Exhibit 3:    Sworn Declaration of Julius Andrew Reason III, providing information regarding Ms. Reason's role in the offense;

Exhibit 4:       Forensic Psychological Evaluation Report prepared by psychologist Gregory C. Landrum, Psy.D.

I.      **BECAUSE THE SENTENCING COMMISSION HAS NOT ESTABLISHED A BASE OFFENSE LEVEL FOR DIBUTYLONE AND ETHYLONE, THE COURT HAS GREATER THAN USUAL SENTENCING LATITUDE IN THIS CASE**

It is axiomatic in most cases that sentencing begins with the correct calculation of the applicable Sentencing Guidelines range. *See, eg., Gall v. United States*, 552 U.S. 38, 49 (2007). This axiom does not apply with its usual authority in this case.

The Supreme Court in *Kimbrough v. United States*, 552 U.S. 85 (2007), recognized a class of cases into which this case falls in which the Sentencing Guidelines do not have their usual "benchmark" authority.  *Kimbrough* involved a sentencing under the old Guidelines structure, in which crack cocaine was sentenced 100 times more severely than powder cocaine. The sentencing judge granted a downward variance based on the court's conclusion that the 100x disparity was unjustified. The Supreme Court affirmed.

In approving the district court's decision to disregard the Guidelines, the Supreme Court began by explaining the reason for the traditional deference given to the Sentencing Guidelines, stating: "While rendering the Sentencing Guidelines advisory, we have nevertheless preserved a key role for the Sentencing Commission. As explained in *Rita* and *Gall*, district courts must treat the Guidelines as the 'starting point and the initial benchmark.' Congress established the Commission to formulate and constantly refine national sentencing standards.  Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough*, 552 U.S. at 108-109 (internal citations omitted).

The Supreme Court held that this level of deference **did not apply** to the crack cocaine disparity because the crack Guidelines "do not exemplify the Commission's exercise of its

characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses . . . the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of 'empirical data and national experience.'" *Id*., 552 U.S. at 109-110.  In this scenario, the Supreme Court approved the trial court's decision to reject the Guidelines' crack ratio entirely, not purport to establish a ratio of the court's own, and frame its final sentencing in line with § 3553(a)'s overarching instruction to impose a sentence sufficient but not greater than necessary.  552 U.S. at 111.  The Eleventh Circuit in *United States v. Garcia-Ramirez*, 556 Fed. Appx. 781, 2014 U.S. App. LEXIS 2376 (11th Cir. 2014), recognized the message of *Kimbrough,* stating that under *Kimbrough* "a sentencing court is free to depart from a guideline sentence on the basis of the § 3553(a) factors when the applicable guideline is not grounded in empirical data."  556 Fed. Appx. at 784, 2014 U.S. App. LEXIS 2376  * 7.

   *Kimbrough* governs this case.  The Commission has not made an "empirical study" or even made a determination regarding the appropriate offense levels for dibutylone and ethylone. Rather Application Note 6 leaves it to the district courts to apply definitions from the Controlled Substance Analogue Act and determine offense levels on an ad hoc, case by case basis. As was the case in *Kimbrough*, since the Sentencing Commission has not exercised its evaluative role to determine the offense level for these substances, this Court has flexibility to favor 3553(a) considerations over the Guidelines.  In short, this Court is not bound by the axiom that the Guidelines are the "benchmark" and a factor must take the case out of the "heartland" to warrant a downward variance. Rather, the Court can and should "frame its final determination in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary, to accomplish the sentencing goals advanced in § 3553(a)(2)."  *See Kimbrough*, 552 U.S. at 111.

II.      **TO THE EXTENT THE COURT DECIDES TO LOOK TO THE SENTENCING GUIDELINES AS A STARTING POINT, THE COURT SHOULD GRANT A DOWNWARD VARIANCE WITH REGARD TO THE GUIDELINES OFFENSE LEVEL CALCULATION**

     A.  **The Court Should Grant a Downward Variance in Its Calculation of the Base Offense Levels for Dibutylone and Ethylone**

We have separately briefed and reaffirm our position that the Court should not use MDMA as a comparator for dibutylone or MDEA as a comparator for ethylone.  *See* Defendant Venteria Reason's Post-Hearing Memorandum of Law Addressing Application of Sentencing Guidelines 2D1.1, Application Note Six, to Ethylone and Dibutylone, D.E. 225 ("V. Reason Ratio Memorandum"). We incorporate the Memorandum at D.E. 225 into this Memorandum. The reasons we disagree with MDMA and MDEA as comparators support a variance should the Court decide to use as comparators MDMA, MDEA, or any substance with a marijuana ratio greater than 1:40 for dibutylone and 1:100 for ethylone.

Courts attempting to apply Application Note 6 have granted downward variances from the offense levels of comparators to account for, *inter alia,* the unstudied effects of a new substance, evidence of unequal potency, and uncertainty regarding relative potency.  In *United States v. Hossain*, 2016 U.S. Dist. LEXIS 528 (S.D. Fla. Jan. 5, 2016), a synthetic cannabinoid case, Judge Middlebrooks granted a downward variance from the 1:167 equivalency of his chosen comparator, THC, to 1:7.  He based this variance on several factors, including the "newness of the regulation of XLR-11, as well as the infancy of our understanding of the effects of XLR-11."   2016 U.S. Dist. LEXIS 528 *17.

Without restating everything in our Ratio Memorandum, a variance is warranted for several reasons.  First, MDEA and MDMA are classified as hallucinogens in the Sentencing Guidelines and in the Controlled Substance schedule. The hallucinogens are as a class scored by

the Sentencing Commission far more severely than the stimulants, as evidenced by the 1:500

median marijuana equivalency for hallucinogens and the 1:100 median marijuana equivalency

for stimulants.  *See* D.E. 225, Data sets at V. Reason Ratio Memorandum, Ex. 3.  In addition, the

Sentencing Commission relied on "unique" characteristics about MDMA in setting its 1:500

marijuana equivalency, including its hallucinogenic effects and scientific research indicating that

MDMA causes short- and long-time brain damage.  *See* Ratio Hearing, Govt. Ex. 11, United

States Sentencing Commission's Report to Congress on the Explanation of Recent Guidelines

Amendments relating to MDMA Drug Offenses.[1]

     As to relative potency, Dr. DiCaprio testified to research on the potency of methylone,

which is similar to ethylone (Tr. Vol. 2. p. 9 and 105), and concluded that it has lower potency

than MDMA. *Id*. p. 108.  *See also* Ratio Hearing, Thames Exhibits 1 and 2. In his report, Dr.

DiCaprio opined that the research supports a conclusion that MDMA is five times stronger than

ethylone. Thames Ex. 4, ¶ 64.  If MDEA is the comparator, this potency difference calls for a

downward variance for ethylone from 1:500 to 1:100.  The 1:100 ratio for ethylone would also

place it at the median among stimulants listed in the Sentencing Guidelines.

     This is the first time any court is addressing the application of the Sentencing Guidelines

to dibutylone.  The only study conducted on the drug indicates that dibutylone is expected to

have stimulant effects, but there is no scientific evidence on its potency or its specific effects.

Based on the lack of evidence regarding potency, and all the reasons stated above as to ethylone,

---

[1] This study, which the Sentencing Commission undertook to arrive at the offense level for
MDMA, is precisely the kind of empirical evaluation that the Sentencing Commission has not
done on ethylone or dibutylone.  See Point I, *supra,* re the reduced authority of Sentencing
Guidelines that are not based on empirical data.

we urge that, if the Court elects to use a comparator with a higher offense level, the court should vary downward to no more than 1:40 for dibutylone.

### B. The Court Should Vary Downward, Discounting the 2-Point Adjustment Under 2D1.1(b)(15)(C)(two extra points for involvement in importation)

If the Court denies our objection and determines that Ms. Reason should get an aggravating role enhancement, the Court should vary downward by deducting from Ms. Reason's offense level the 2-point upward enhancement under Sentencing Guidelines § 2D1.1(b)(15)(C) for being involved in the importation of a controlled substance. *See* PSR ¶ 63. This 2-point enhancement only applies if a defendant convicted of distribution has also received an aggravating role enhancement. The Commentary to § 2D1.1 discusses this 2-point enhancement at Application Note 20. That Application Note provides no reason for further penalizing an individual convicted of distribution who has already been saddled with an aggravating role enhancement. *See United States v. Estavillo-Avendano*, 2014 U.S. Dist. LEXIS 134018 (M.D. Ala. 2014)(rejecting 16-point enhancement to illegal reentry Guideline for prior felony conviction based in part on the enhancement being unsupported by empirical data or a stated justification).

Also, the way the drugs were imported in this case was less involved than is the norm. Mr. Reason placed orders with vendors he found over the internet, who mailed the drugs using conventional mailing channels. To the extent the 2D1.1(b)(15)(C) enhancement is intended to account for the elaborate arrangements often required to import drugs, those arrangements are not present here. In addition, Ms. Reason had a limited role in the importation aspect of this operation. As Mr. Reason has acknowledged, "I found on the internet the places in China to buy the drugs and I decided what to buy, how much to buy, and at what price. I made all the arrangements to order and ship the drugs." Ex. 3, Julius Reason Declaration ¶ 2. If Ms. Reason

receives a 3-level aggravating role enhancement, her receiving two more points under § 2D1.1(b)(15)(C) would be excessive.

### III.   Leniency is Warranted by Consideration of the Factors Set Out in 18 U.S.C. § 3553(a)

As we have explained above, because the base offense levels for dibutylone and ethylone are not the product of the Sentencing Commission's evaluative role, the Court in this case is not bound to accept these base offense levels as the "benchmark" in imposing sentencing.  As did the district court in *Kimbrough*, this Court should rather "frame[] its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary, to accomplish the sentencing goals advanced in § 3553(a)(2).'" *Kimbrough* 552 U.S. at 575. An analysis of the 3553(a)(1) and (2) factors supports a sentence significantly below what the Sentencing Guidelines calculation would yield.

#### A.   § 3553(a)(1):  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011)(affirming lower court's consideration of post-sentencing rehabilitation in varying downward). "Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Id.*

Venteria Reason is a 28 year old woman without any prior criminal history. She has zero criminal history points and a Criminal History Category of I.  Attached to this motion as Exhibit 1 are letters to the Court from family members and friends of Ms. Reason. The people who have written on Ms. Reason's behalf have had the opportunity to observe her over many years, in

some cases her whole life; they have seen and describe the struggles she faced as a teen and young woman; they have seen day in and out the love and care she gives her children, N, age 9, M, age 6, and J, age 4; they have seen and attest to the goodness they have seen in her.

Venteria Reason has pleaded guilty and accepted responsibility for assisting her husband to import drugs. The mistakes she made, her "human failings," as the Supreme Court put it in *Pepper*, should be considered in context of her entire life.

Venteria began her life in a home with both her parents. Her parents separated when Venteria was a baby, and Venteria went to live with her father. When she was 5, she went to live with her two younger brothers and her mother in Belle Glade.  Venteria recalls those as happy years.  She describes her mother as loving, someone Venteria could talk to, who always made people laugh, in short, "the perfect person."



credits the Upward Bound program for getting her through high school, despite a home environment that was utterly unencouraging; high school graduation was a highlight for her. She dreamed of going to college and becoming a pediatrician. After graduation, at age 18,

10

Venteria was self-supporting, working at Walgreen's, had a boyfriend, and was attending college at Indian River State College.  She finished her first semester of college, and had high hopes for her future.  Venteria became pregnant during her second semester of college.  She thought it best to suspend school so she would be more financially secure by the time the baby came.  Venteria had her first child, N., when she was 19 years old. Venteria was happy to have a daughter to love, who would love her. Venteria and N.'s father separated about a year and half after N. was born, when Venteria was pregnant with their second child. The girls' father provided minimal court-ordered monetary support to his daughters, but took no interest in helping Venteria raise the children. At the age of 21, Venteria was a single mother of two babies, working full-time to support herself and her family.

Venteria explains that in November 2010 she started dating Julius Reason. "He had all the right things to say to make me fall for him. He showed me exactly the love I had searched for." The thing she loved the most was that he loved and cared for her daughters like they were his own. Venteria knew from Julius that he had been involved with illegal drugs. She encouraged him away from that.  She helped him to open a lawn care business and made all the contracts, business cards, tee shirts and paperwork he needed to run the lawn care business. Julius and Venteria welcomed a son, J., in 2012.  Venteria truly loved her husband and children, and she took great joy from their family life. As Venteria's aunt, Octavia Curtis, explains in her declaration (Exhibit 2), Venteria enjoyed planning birthday parties for the children and made all their holidays special. She helped them with homework and tried to give them every day the love she felt she had not received as a child. When Julius resumed his involvement in drugs, she was alarmed, but she accepted his assurance that it was only "temporary." When he asked her to help

him she did. She loved him and she didn't want to lose him or see the family that gave her so much happiness busted apart.

███████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

The same sentiment is expressed in laymen's terms by Venteria's step-mother, Annie Mae Stokes, who says in her letter to the Court (Exhibit 1, Letter No. 2), "Please understand that I am not blaming her husband for Venteria's acts. She is an adult and she does know right from wrong. However, I honestly believe that she was so wrapped up in trying to make him love her that she was willing to throw herself away, without even realizing it." Dr. Landrum's findings and the emotional wounds Ms. Reason has sustained sheds light on why she agreed to assist her husband in his drug business rather than leave him.

The hardship Ms. Reason's children face without her should be considered in mitigation. Exhibit 2 to this motion is a declaration from the children's caregiver, Octavia Curtis. Ms. Curtis

explains that Ms. Reason's school age daughters ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. Many of the friends who

have written letters speak of the difficulty the children are having with their mother separated

from them. *See* Exhibit 1. Ms. Reason has no one to blame but herself; however the children are

utterly blameless. Ms. Reason longs to re united with her children, but more important, they

long to be reunited with her.

**B.   § 3553(a)(2)(A)-(C): The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide for General and Specific Deterrence**

These factors go more to the offense than the offender.  We are mindful that the offense

is serious and that the Court has to balance the concerns of general deterrence and respect for the

law. We return to the Supreme Court's observation in *Pepper* that the "human failings" which

distinguish every offender "sometimes mitigate, sometimes magnify, the crime and the

punishment to ensue."  *Pepper v. United States*, 562 U.S. 476, 487 (2011).  We believe that Ms.

Reason's personal circumstances mitigate the seriousness of the crime and warrant mercy in

rendering punishment.

As to specific deterrence, Ms. Reason is committed to reforming her life when she is

released from prison. Her aunt, Octavia Curtis, says in her letter (Exhibit 1, Letter No. 1) that at a

recent jail visit, Ms. Reason told her: "Once I am able to return home, I will focus on getting my

life back together and getting back to being a loving mother and good influence for my kids."

Ms. Reason has always worked and held down two jobs while she was on pretrial release. Her

friend Vanessa Keen, who worked with Ms. Reason at Walgreen's, states in her letter in Exhibit

1 that Ms. Reason was "sweet and soft spoken but a great worker to have on the Walgreen's

team." Ms. Reason has worked steadily since she was 16, including while she was on pretrial release in this case. She will have no trouble finding and keeping a job when she is released.

In addition to these personal factors that weigh in favor of Ms. Reason's rehabilitation prospects, based on a recent report by the Sentencing Commission, Ms. Reason, as an offender with 0 criminal history points, is in the class of offenders which the Commission's data indicated showed one of the lowest reconviction rates, at 17.4%.[2] The Conclusion to the Commission's Report stated that, based on their data, "offenders with more extensive criminal histories recidivated at significantly higher rates than offenders with lesser criminal histories." *Id.* p. 27. Having had her first taste of incarceration, Ms. Reason looks forward to the day when she can be reunited with her children and is committed to never doing anything that will send her back to jail.

### C.  §3553(a)(3):  The Kinds of Sentence Available

The offense to which Ms. Reason pleaded guilty does not carry a mandatory minimum sentence. Based on this, and the fact that under *Kimbrough* the Court is not bound to defer to the Guidelines, the Court has wide latitude in fashioning a sentence that fits both the offender and the offense. In addition, the available supervised release term is from three years to life. If, as we hope, the Court gives Ms. Reason the chance to be released and reunited with her children soon, the Court can substitute a lengthy supervised release term for a protracted term of imprisonment. This is Ms. Reason's first arrest and her first period of incarceration. Ms. Reason has maintained legal, gainful employment throughout her adult life. We urge that her excellent prospects for rehabilitation and the needs of her family warrant reducing her prison term in favor of a longer

---

[2] See United States Sentencing Commission, Recidivism Among Federal Offenders, A Comprehensive Overview March 2016, at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf, Appendix A-2.

term of supervised release.

> **D. §3553(a)(4) and (5):  The Kinds of Sentence and Sentencing Range Established by the Sentencing Guidelines and any Pertinent Policy Statements issued by the Sentencing Commission.**

As this case is governed by *Kimbrough,* the Court is not bound to defer to the Sentencing Guidelines.  Accordingly this factor does not apply with the force it does in most cases. To the extent the Court wishes to refer to the Sentencing Guidelines sentence range, for all of the reasons we have stated in this Memorandum, the Court should grant a substantial downward variance.

> **E.  §3553(a)(6):  The Need to Avoid Unwarranted Sentencing Disparity**

The sentence should avoid disparity among the defendants in this case. In *United States v. Roberts*, 2015 U.S. Dist. LEXIS 129363 (S.D. Fla. Sept. 25, 2015), Judge King recognized the Court's power to grant a downward variance to achieve a just sentence differential between multiple defendants with different levels of involvement.  Here, the Court should impose a jail sentence on Ms. Reason that is substantially shorter than the sentence imposed on her husband. It gives us no joy to urge this; Ms. Reason cares for her husband; Mr. Reason's children miss him just like they miss their mother; and his life surely had its share of hardship. However, at least two objective considerations support this request. First, Ms. Reason is before the Court as a first offender, experiencing for the first time the chastening effect of imprisonment. Second, Mr. Reason has acknowledged, and the evidence bears out, that Ms. Reason's level of responsibility and involvement was significantly less than Mr. Reason's. In Mr. Reason's declaration as Exhibit 3 ("Julius Reason Declaration"), he states, "I was the only person who made decisions in my drug business. I found on the internet the places in China to buy the drugs and I decided what to buy, how much to buy, and at what price.  I made all the arrangements to order and ship the

drugs and I packaged and sold them once they arrived here." The right verb to describe Ms. Reason's involvement is the one selected by the PSR: she "assisted" him over the course of the conspiracy (PSR ¶ 53). As an assistant and not a decision maker, and as a first offender, Ms. Reason's sentence should be substantially less than Mr. Reason's.

### IV.    WE RESPECTFULLY ASK THE COURT TO IMPOSE THE SHORTEST PERIOD OF INCARCERATION POSSIBLE

Venteria Reason is deeply sorry for having involved herself in this offense. She feels the shame of having let her children and her family down, and having let herself down. Remembering the Supreme Court's language in *Pepper*, her "human failings" and the emotional neediness that her troubled childhood left her with contributed to and mitigate this offense. Hopefully she will receive counselling both during her incarceration and during supervised release. As Venteria Reason told her aunt (*see* p. 13), she looks forward when she is released to getting her life back together and getting back to being a loving mother and good influence for her kids. They are suffering without her. We respectfully ask the Court to temper justice with mercy for Ms. Reason and to impose a sentence that will allow her to return to her children as soon as possible.

Dated: February 21, 2017

                                        Respectfully submitted,

                                        s/ Julie Prag Vianale
                                        Julie Prag Vianale (FBN 0184977)
                                        Attorney for Venteria Reason
                                        Vianale & Vianale LLP
                                        5550 Glades Road, Suite 500
                                        Boca Raton, FL  33431
                                        Tel: (561) 392-4750
                                        jvianale@vianalelaw.com

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel hereby certifies that she emailed the foregoing document to the counsel listed below and also filed the foregoing document on February 21, 2017 using the Court's CM-ECF system, which will cause a true and correct copy to be sent electronically to:

Carmen Lineberger
Assistant United States Attorney
101 South U.S. Highway 1
Suite 3100
Ft. Pierce FL  34950
carmen.lineberger@usdoj.gov

s/ Julie Prag Vianale
Julie Prag Vianale (FBN 1084977)
Vianale & Vianale LLP
5550 Glades Road, Suite 500
Boca Raton, FL  33431
Tel: (561) 392-4750

18

Exhibit 1

24 October 2016

To the Honorable Robin L. Rosenberg
United States District Judge
Southern District of Florida

Dear Judge Rosenberg,

I am writing this character reference for my neice, Venteria Reason.
She will come in front of you for sentencing on a conspiracy charge of
attempting to import a controlled substance. Venteria had such a hard time
telling me about pleading guilty to this one charge.

Venteria and I have always been close, just like sisters. Her mother was my
sister and after her mother died when Venteria was at a young age, we
have always had a love and admiration for each other.

I watched this young lady through all of her school years. She was an
Honor Student throughout her elementary, middle and high school years.
Venteria was chosen to take AP classes at Sebastian River High School
where she excelled. Her dream was to be a pediatrician.

This situation is completely out of character for her. Venteria has never
been in any kind of trouble for her entire life.

Our family are members of The Church of God in Christ. We are a family of
believers and prayers. Venteria and I were brought up to Honor God.
In fact when she was just 13 years old, she was selected to be the youth
secretary of the church which included overseeing the finances.

My neice had a hard time when she lost her mother due to a drug
overdose. She had loving family members but it is just not the same when
you are only 13 years old. However, even during this horrible tradgedy,
Venteria never lost her faith. She has always tried to do the right thing in
any matter with her children, her work and her finances. She has a humble
heart and is always smiling and eager to lend a hand where needed.

Venteria's three young children are living with me at the moment. They ask daily when is their Mother going to come home. These kids had never spent even a night away from their mother until she was placed in jail about a month ago. These children aren't as happy because a big piece of their life has been removed from them. She has two daughters who are 6 and 8 and a little boy who is three years old. The kids cry for their Mom and her hugs and her smiles and her genuine concern for every area of their life.

Venteria tells me she has learned that some people can destroy her life and character in just a moment's time. She also knows that some people make her look like a bad person when she isn't

When I visited Venteria in jail last week, she said, "Once I am able to return home, I will focus on getting my life back together and getting back to being a loving mother and good influence for my kids." I do know she has a very good job waiting for her at The Flight Safety School located at the Vero Beach Airport. They know she is a dependable worker with a great attitude. Venteria is a blessing to have as an employee because of her happy and joyous personality.

Your honor, I know all of your decisions are hard especially when it comes to little children and their future. I feel certain that this will be the last time Venteria will appear before you or any other judge. Her children are more important to her than anything or anyone.

Thank you for taking the time to read my character reference for Venteria.

Sincerely,

Octavia Curtis
Pharmacy Technician at Walgreens for almost 20 years

If you need me for anything else, please feel free to contact me.
My cell phone number is 772-538-0952
My home adress is 1376 24th Place SW
Vero Beach, FL 32962

February 17, 2017

Your Honor,

I am writing this letter on behalf of my step-daughter Venteria Reason. I have been
blessed to be a part of Venteria's life for over 10 years. I am literally sitting at my
computer, with tears flowing down my face, attempting to type this letter. Not because I
lack words about her, but because my heart is devastated at the thought of our
daughter being sent to prison. When I met Venteria, I instantly fell in love with her
humbleness. She had such a sweet demeanor and a giving heart. I watched her
blossom into a lovely woman and a nourishing mother to her 3 beautiful children. Your
Honor, I am in no way trying to ignore her present circumstances, I am only imploring
for leniency in her sentencing. Upon hearing about the serious charges against her I
was absolutely dumbfounded. These acts were out of character for Venteria, and her
lack of any criminal history supports that. I sat and pondered as to what would lead such
a bright young lady down a road so off path for her. Please understand that I am not
blaming her husband for Venteria's acts. She is an adult and she does know right from
wrong. However, I honestly believe that she was so wrapped up in trying to make him
love her that she was willing to throw herself away, without even realizing it. That
relationship had become detrimental and instead of trying to find the inner strength to
walk away, she allowed his manipulation to take over and she became blind to the fact
that she had become lost. Lost trying to please someone else, which is her character.
She has always put others before herself, but this time it has destroyed not only her
future, but the lives of the 3 children that need their mother. Her 2 daughters and son
adore her. The way they interact with their mother would warm your heart and to have
them be raised without her is going to be unfavorable for them. Venteria has a
remarkable support system behind her and I feel that despite her poor choice in
judgement, she is a vital asset to our family and her community. I thank you for taking
the time to read my letter and I pray, by the grace of God, that your heart be shifted
towards mercy during the time of her sentencing.


Sincerely,

Annie Mae Stokes
Annie Mae Stokes

To the Honorable Robin L. Rosenberg
United States District Judge
Southern District of Florida

Dear Judge Rosenberg,

I hope this letter finds you in great spirits. I am writing regarding Venteria Reason who is awaiting her hearing for Conspiracy to import control substance into the United States.

As a first offender and a mother of three, I am asking you to be lenient on her sentencing.

Venteria assisted with raising myself, my younger sister, and her three brothers while balancing academics and extracurricular activities during high school. Throughout middle school, I viewed her as my role model. She did really well in high school, was well respected, and treated others with the utmost respect. When she matriculated to the Indian River State College, she eventually became pregnant with her first child. She made one of the toughest decision an individual can make. She forwent her aspirations of becoming a physician to ensure her daughter Navaeh had a stable home. I respect Venteria a great deal for her actions.

The selfless character she carries has blessed her abundantly but, in my opinion, has negatively impacted her as well. However, all of us on this earth have made mistakes. Some little and others large. As a previous member of my undergraduate's Honor Council, I respect the legal system in our country. I also respect the right you have as the presiding judge to decide what sentence is appropriate for this specific case; Venteria's case. The mother of three, the daughter of a woman whose life ended when her children were in grade school, and a person who can make any environment shift toward positivity with her laughter and wit. She deserves a second chance for herself and more importantly for her children.

Warm regards,

Cortez L. Brown
FSU College of Medicine
M.S./M.D. Candidate, Class of 2021
clb16e@med.fsu.edu
772.766.3893

October 31, 2016

To the Honorable Robin L. Rosenberg
United States District Judge
Southern District of Florida

Honorable Judge Rosenberg,
         I'm writing to you out
of concern for three special children.
Their mother, Venteria Reason, is
a close friend, whom I consider family.
I've had the pleasure of knowing
Venteria for nearly 10 years. Her children
are her pride and joy. They adore her.
I have five children of my own and
have worked in child care for many
years. She is one of the best most
loving mothers I know. I have
never been in trouble with the law
and would never entrust my children
with someone who is considered a
criminal. Venteria has cared for and
supervised my children many times
over the years. I still would not
hesitate to leave them in her care.
         Venteria is also a very hard
worker. She has always provided
well for her children. They are

always well dressed and appear
to be happy, and healthy in her care.

[redacted]

are between the ages two and ten.
These ages are Critical in molding
them into who they will be. The
experience of having their mother,
whom they have always been
close to, taken away has been
very traumatic for them. I feel the
longer she is away from them,
the more their future will be jeopardized.
I ask you to please take this into
consideration when determining
Venteria's future.

Sincerely,
x Penny Cicco

Penny Cicco

15 October 2016

To the Honorable Robin L. Rosenberg
United States District Judge
Southern District of Florida

Dear Judge Rosenberg,

I was stunned and heart broken to learn of the tragic legal issues that my friend, Venteria Reason, has been charged with. She told me, with her head down in shame, that she had pleaded guilty to a conspiracy charge of attempting to import an illegal substance. This statement came from a girl who has never been arrested or been in ANY kind of trouble.

When Venteria came to my house and told me of her situation, everyone sitting at my kitchen table cried. For over thirty years I have been an educator with over half of them in Indian River County. It was obvious when I first met Venteria that she truly loved her children and that their success in life and in school was a priority.
Up until the day she was placed in jail just three weeks ago, this mother had never spent a night away from her three children. She has patience when helping them with their schoolwork. These three children need their mother daily for support and unconditional love.

Venteria was only 12 when her mother died. She had no good supportive home life because her father was in prison. Venteria was sent to live with different family members. Some adults taught her good character skills and took her to church. Then some of the adults she stayed with were more concerned with their own kids or jobs.

This young lady is always in a good mood and has a helpful personality. She did graduate from Sebastian River High School and started on her dream of becoming a pediatrician. She completed two semesters before delaying the rest of her education to devote as much time as she could to being a good mother.

Venteria has always told me that she wanted a solid and secure home life for her daughter ████████ who is 8 years old, her daughter ████████ who is 6 years old and her 3 year old son ████████

If her legal issues can be resolved quickly, Venteria has a very good position waiting for her at the Flight Safety School located at the Vero Beach airport.
This young lady really does like this job and they want her back as soon as she can possibly return.

Judge Rosenberg, I do not know of your personal spiritual beliefs, but I do want to share with you something that Venteria and I have in common. We are both God-fearing women. We are both believers and prayers. Venteria shares with me her favorite scriptures. There are a lot of people praying for grace and mercy with this situation. People from Vero Beach and Sebastian are praying for her. Also, in states as far away as New York and Mississippi Venteria's name is lifted up to Our Heavenly Father.

Hundreds, literally hundreds of people know that this issue is out of character for her. We have been assured by this sweet lady that her lesson has been learned.

When her problems are behind her, she has advice that she wants to share with other young adults. Mainly..............

"Be careful of the company you keep."

Your Honor, the outcome of your decision will affect the lives of three small children who truly need their loving mother. There is one aunt involved with the children but she is a Pharmacy Technician going to college to become a Physical Therapy Assistant. This aunt has shared with me that she is exhausted and she had to stop her education when her niece, Venteria, was placed in jail. It was too hard for her to work, take care of her kids, go to college and then be primary caretaker for Venteria's three little children. These little children cry for their own mother.

Thank you for taking the time to read my letter. This lady is a good friend with a good heart!

Sincerely,

Teresa Burlison

Teresa Burlison
4384 Second Square Sw
Vero Beach, FL 32968          Home phone number 772-778-1978



November 1, 2016

To the Honorable Robin Rosenberg
United States District Judge
Southern District of Florida

Dear Judge Rosenberg,

Venteria Reason is a young lady who will appear before you for sentencing soon. She is pleading guilty for conspiracy to import drugs that are illegal. The charge and plea make me feel just sick. I am so stressed and heart broken. This is not the young girl I have watched grow up.

Venteria calls me Auntie Shnea. We have always been in each others life. My neice is very special and has a heart of GOLD. She would do anything in the world to help anyone. She is a wondeful mother to her three children. Venteria is nice and kind to everyone whether very old or very young. She treats all people the same regardless of their looks or money. Her smile alone lights up any room she enters.

Unfortunately, the way her heart is in her Soul may have caused her to not see decisions she made clearly. A very sad thing is that Venteria is too trusting.
She feels everyone deep down is as honest as she is. This has been a very hard lesson for Venteria to learn.

When this young mother is unable to be with her children, the sad circumstance affects multiple people. It causes a lot of hardship on her kids and those family members who are trying their best to raise three children who yearn terribly for their sweet mother.

Your Honor, I am pleading for compassion not just for me and other family members............. but for the children.

Thank you.

Shnea Wright
772-501-1829

31 October 2016

To the Honorable Robin L. Rosenberg
United States District Judge
Southern District of Florida

Dear Judge Rosenberg,

I am writing this letter as to the character of Venteria Reason. I have been around her for over eight years. During the time I have known her, she has been a very good person. She is always willing to help someone if it is in her power.

Venteria has three beautiful children to which she loves very much and would do anything for them. Venteria also never ignores other people with needs. She is known to share her food, her clothing, her car and what little bit of money she has.

During the time I have known her she has been a really good person and a good friend.

There are people you meet in your lifetime that you are proud to say that you know them and Venteria is definitely one of those type of people.

The things she has been enduring these past months I know is really hard for her. Not being able to see and be a mother to her three wonderful kids is really hard on her. And them extra hard.

I was shocked to hear she could be tied up with any type of trouble. Please remember that this is NOT the Venteria I know. She wants to be known as a good person and good example for her kids. How this trouble came her way is a big mystery because she has never been in any kid of trouble. She is known by her friends and family as being an honest and truthful person.

These are the things that I have to say about this special young lady.

Sincerely, Charlie Miller

# New Beginnings Outreach & Support Ministries Inc.

FEIN# 80-0930475
633 77th Street
Niagara Falls, NY 14304
716-990-7664
newbeginningsoutreachministry@yahoo.com

October 25, 2016

To the Honorable Robin I. Rosenberg
United States Distrcit Judge
Southern District of Florida

Dear Judge Rosenberg,

I am writing this character reference letter on behalf of Venteria Stokes-Reason, who is appearing before your court for drug charges.

I have known Venteria her whole life. I am well acquainted with her character and background. Although she has found herself in difficult and unfavorable situation. I would like to speak to who she is at the core of her being.

Venteria is the mother of 3 young children, and a very good mother. She has always worked hard and spent time to ensure that her children are taken care of. Her children mean the world to her, and being separated from them has caused extreme emotional and mental pain for her and them. Venteria has no previous criminal record and has lived her life trying to always do better by honorable means, she is highly intelligent, & always made good grades in school .

Venteria has made mistakes and I know she is truly remorseful and would make better decisions if given a chance. I am hoping that you will  allow her the opportunity to make those better decisions, to be rejoined with her children and give them the stability they need, with at least one parent being there to provide for them. Please consider this when making your judgement on the punishment you give her.

Please feel free to contact me at anytime if I can speak further to the benefit of Venteria and her family.


**Latoshia Hubert**
Minister Latoshia Hubert

October 20, 2016

Judge Robin L. Rosenberg
United States District Judge
Southern District of Florida

Dear Judge Rosenberg,

I am writing to you on behalf of Venteria Reason. I understand that she is currently incarcerated and waiting an upcoming sentencing date.

I met Venteria while I was working as a pharmacist at the Walgreens on 58th Ave. and State Road 60. She was working as a cashier in the front of the store. Her Aunt, Octavia Curtis, introduced us. I also worked with Octavia in the pharmacy. Venteria was sweet and soft spoken but a great worker to have on the Walgreens team. She always had a smile on her face and a willingness to work. She left Walgreens to take a job that was going to be better for her growing family and I was so excited for her.

I realize that since her leaving Walgreens several years ago that she has made some choices that have not been beneficial to her or her family. I pray she has realized these errors. I do know that she is deeply loved by her Aunt, Octavia Curtis. Octavia has poured into her life since Venteria was a young child but continues to often times have tough love for her as well as support her. Outside of those that love her, Venteria shows much love and devotion to her children. Her children have always been polite and sweet. I know she loves them dearly and would not want to miss a moment of their childhood memories as well as these children need their mother.

Venteria also spends time at her church, Gatherers of the Harvest. This is a great place for her to focus on God and His plans for her. It is also a place of positive support, assistance and correction. I am very grateful she has this congregation.

I pray for leniency for Venteria. I pray for her children to have a mother at home to raise them. Please consider a sentence that will give this mother and her children a chance to live together and better themselves and their community.

Thank you for your time,

*Vanessa Keen*

Vanessa Keen

09/30/2016

To Whom It May Concern:

I have known Venteria Reason both on a personal level for about 15+ years and professional level as her Supervisor for about 4 months.  Venteria has always shown great sympathy, compassion, and a desire to be a hard working individual.

Venteria is a great Mother who often speaks kindly and fondly of her family.  She is also a hard worker, having just started working with me and learning and going solo on her own within 1 week of being trained, and also holding down another job.  All the co-workers enjoy working with her and everyone was always greeted with a beautiful smile and a willingness to help and assist at anything that was asked of her.

I have no hesitation in writing this letter of character as I know Venteria to be an amazing young lady, a hard worker, and a great Mom.

Sincerely,

Kimberly Boykin

Exhibit 2

2017/02/21 11:37:06   2 /4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION
Case No. 16-14002-CR-ROSENBERG/LYNCH

UNITED STATES OF AMERICA,

-v-

VENTERIA LEANET REASON,

Defendants.

DECLARATION OF OCTAVIA CURTIS

OCTAVIA CURTIS, swears under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.     I am Venteria Reason's aunt, the sister of her deceased mother. I am submitting this sworn declaration to the Court to provide additional information about Ms. Reason's three children.

2.     Venteria has three beautiful young children. Her oldest child, her daughter ███ is 9 years old.  Next is her daughter ███, who is six. Their father is a young man Venteria had a long-term relationship with before she met Julius Reason. The girls' father has taken on no parental role in their life all, though the state does make him pay some child support. Julius is the only father they have ever known. Venteria's youngest child, ███ is four years old. Julius is his father.

3.     I know Venteria made mistakes.  But the fact is that she loves her children and they love her so much.  They are suffering terribly without her. Since her children were born, Venteria didn't spend more than a few nights away from them. She did all the little and big

1

things that she thought would bring them the joys of family life. She planned the children wonderful, joy-filled birthday parties every year, and made sure the Christmas and other holidays were special for them. Venteria went to all of her children's school events and went along as a chaperone on field trips whenever her work schedule allowed. She helped her children with homework, made sure they got to the doctor when they needed it, comforted them when they were down. She is truly a most caring, attentive and loving mother.

4.      All three of the children are suffering without Venteria.



Being that I am a single working mother, getting her adequate tutoring or being present for all of her homework questions is something I just cannot do. The expense of a tutor is out of my budget and my work schedule is not consistent. I believe _____ understands the situation. She tries to be strong for her younger siblings but every now and then she just breaks down and starts to cry and ask for Venteria.

5.

She, too, cries for her mother and asks when she is coming home.

6.      J_____ cried himself to sleep countless nights during his mother's incarceration. Being that J____ is only four years old, I don't know what to say to him.

7.      My youngest daughter is leaving for college in the fall. She has been a big help with taking care of Venteria's children. However, I can't ask her to make the sacrifice of going to college locally so she'll be here to continue helping me. I was sorry to be unable to visit colleges with my daughter. I have no help in caring for the children, and I have not received any

support from our extended family – financially or physically. Providing for the three children on college visits was not feasible for me. My daughter understood, but it was a disappointment for both of us.

8.      Raising three small children is not what I expected for my life at this juncture, at age 43. As I explained, my youngest daughter is leaving for college. A few years ago, when she got old enough to take care of herself, I began taking college classes. I dream of becoming a physical therapy assistant. When Venteria moved in, I made the decision to drop all of my college courses to ensure I was available for her and her children. Now, with my responsibilities as the only caregiver to Venteria's three children, returning to school is impossible. Deferring my hope to become a physical therapy assistant has been a deep disappointment for me. For my own sake, I hope that one day soon Venteria will be returned to her children, and I will be able to return to school.

9.      I know that as hard as this is for me, it's a hundred times harder for Venteria's three children. Growing up I too was a motherless child. I empathize with N█████, M█████, and J█ for the loss of their mother. I'll do my best to provide for their material needs and make sure they have a home, but I'm not their mother. I can tell that they feel lost and abandoned without her. Their loss and sadness is heartbreaking to me.

10.     I appreciate the Court taking the time to read this, and I hope that the sentence Venteria receives will allow her to return to her children as soon as possible.

Sworn to under penalty of perjury this 21st day of February, 2017

_Octavia Curtis_
Octavia Curtis

3

Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION
Case No. 16-14002-CR-ROSENBERG/LYNCH

_____

UNITED STATES OF AMERICA,
-v-
JULIUS ANDREW REASON, III, and
VENTERIA LEANET REASON,

Defendants.

_____

### DECLARATION OF JULIUS ANDREW REASON III

JULIUS ANDREW REASON III, swears under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am submitting this sworn declaration to the Court to provide additional information explaining the role of my wife, Venteria Leanet Reason, in the crimes to which she and I have pleaded guilty.  I'm not going to discuss the parts of the Pre-Sentence Report that Venteria hasn't disagreed with. I mostly want to explain my view that Venteria's role wasn't a big one or a responsible one, particularly when you look at it over the two-year period involved in this case.

2.      I was the only person who made decisions in my drug business. I found on the internet the places in China to buy the drugs and I decided what to buy, how much to buy, and at what price.  I made all the arrangements to order and ship the drugs and I packaged and sold them once they arrived here.

3.      In paragraph 40 of Venteria's Pre-Sentence Investigation Report, there's information about emails from "Jody" to "Lulu" that Venteria forwarded me from her email account. Paragraph 39 also talks about emails between Jody and Lulu from Venteria's email

1

account.  I used the name Jody when I communicated with the suppliers in China. These emails were all sent by me using Venteria's account.  I could never remember the login for my own email account and I used Venteria's account a lot. I would ask her to give me her login information when I forgot mine. She did not communicate with the suppliers or place orders for drugs. That was not a role she was ever involved in.  I did all of that.

4.     I would also use Venteria's phone to send texts sometimes when my phone was dead or I didn't have my phone with me. I definitely remember sending from her phone the texts in paragraph 36 of her report. It was also me, not Venteria, that sent the texts in paragraph 37.  I remember sending those texts.

5.     In paragraph 34 of Venteria's Pre-Sentence Report, it talks about texts on July 8, 2015 around Venteria making a delivery for me. I remember that day because her agreeing to make a delivery for me was very unusual. She didn't want to do it that time.  She was frightened and that was not a role she was willing to be part of in my business.  I talked her into doing that on that occasion. The time in December 2014 mentioned in paragraph 38, when I asked her to package two ounces of marijuana for me, I remember how mad she was. You can tell from the texts how unhappy she was that I asked her to do that.  I don't remember any deliveries Venteria made except the one on July 8, 2015.

6.     The report also says that Venteria recruited Natasha Thames to open a post office box to receive drug deliveries.  I remember the first day I talked to Natasha about her opening a box and Venteria wasn't at the house at the time of that conversation.  I've known Natasha for years, so I had opportunities to talk to her one-to-one whenever I wanted.  I asked her if she would open a post office box and told her I'd pay her.  She agreed to do it.  I was the one who paid Natasha when she was owed money and I picked up from her any packages that came to her

2

box. ~~I told~~ _JAR III_ _found out_ _JAR III_ Venteria after the fact that I had asked Natasha to open a box for me, but it was me that asked Natasha to do it. During this time, Venteria had moved from Vero Beach up to Palm Bay so she wasn't around my house in Vero Beach very often. Venteria did not ask Natasha to open a P.O. Box, I did.

Sworn to under penalty of perjury this ___ day of February, 2017

_Julius A Reason III_
Julius Andrew Reason III

Exhibit 4

## Gregory C. Landrum, Psy. D., LLC
CLINICAL AND FORENSIC PSYCHOLOGY

Forensic and Psychological Assessment
Psycho-Educational Evaluation
Adult, Adolescent, Child

Board Certified in Forensic
Clinical Psychology
American College of Forensic Examiners

## FORENSIC PSYCHOLOGICAL EVALUATION REPORT
### (Confidential)

### IDENTIFYING INFORMATION

| | |
|---|---|
| **NAME:** | Reason, Venteria  Leanet |
| **SEX:** | Female |
| **RACE:** | Black |
| **DATE OF BIRTH:** | ▮▮▮▮▮▮ |
| **DATES OF EVALUATION:** | 12/08/16; 12/18/16; 1/12/17 |
| **AGE:** | 28 Years |
| **EVALUATION LOCATION:** | St. Lucie County Jail |
| **CASE NO:** | **16-cr-14002-ROSENBURG/LYNCH** |

### REASON FOR REFERRAL

Venteria Leanet Reason presents as a 28 year old black female who has been referred for a **confidential** Forensic Psychological Evaluation by her attorney, Ms. Julie Prage Vianale, to assist with case planning and disposition. Ms. Reason has been charged with Conspiracy to Import a Controlled Substance-Dibutylone HCI, Conspiracy to Manufacture, Possess with Intent to Manufacture and Distribute a Controlled Substance-Dibutylone HCI, and Possession with Intent to Distribute a Controlled Substance-Dibutylone HCI.

### BACKGROUND INFORMATION AND RELEVANT HISTORY



11080 S.E. Dixie Highway • Hobe Sound, Florida 33455
(772) 546-9103 • (772) 546-7667 Fax

Forensic Psychological Evaluation
Reason, Venteria  Leanet
Case No. 16-cr-14002-ROSENBURG/LYNCH

Page 2 of 7

## BACKGROUND INFORMATION AND RELEVANT HISTORY (Continued)



Forensic Psychological Evaluation                    Page 3 of 7
Reason, Venteria  Leanet
Case No. 16-cr-14002-ROSENBURG/LYNCH

## BACKGROUND INFORMATION AND RELEVANT HISTORY (Continued)



## INSTRUMENTS ADMINISTERED/PROCEDURES USED

Clinical Interview and Observations
Mental Status Examination
Millon Clinical Multiaxial Inventory-Third Edition (MCMI-III)
Personality Assessment Inventory (PAI)
Trauma Symptom Inventory-Second Edition (TSI-2)
Record Review to Include:
   Superseding indictment
   Certificate of Trial Attorney
   Penalty Sheets
   Application for a Search Warrant
   Email Letter of 6/09/16 to Ms. Carmen M. Lineberger, Assistant United States Atty.
     From Ms. Julie Prag Vianale

## BEHAVIORAL OBSERVATIONS

Forensic Psychological Evaluation
Reason, Venteria  Leanet
Case No. 16-cr-14002-ROSENBURG/LYNCH

**BEHAVIORAL OBSERVATIONS** (Continued)

**TEST RESULTS AND CLINICAL IMPRESSIONS**

**Mental Status Examination**

**Personality Functioning**



Forensic Psychological Evaluation
Reason, Venteria  Leanet
Case No. 16-cr-14002-ROSENBURG/LYNCH

## TEST RESULTS AND CLINICAL IMPRESSIONS (Continued)



Forensic Psychological Evaluation
Reason, Venteria  Leanet
Case No. 16-cr-14002-ROSENBURG/LYNCH

Page 6 of 7

## TEST RESULTS AND CLINICAL IMPRESSIONS (Continued)



**Diagnostic Impression**

**Clinical/Forensic Opinion**

Forensic Psychological Evaluation
Reason, Venteria  Leanet
Case No. 16-cr-14002-ROSENBURG/LYNCH

Page 7 of 7

## TEST RESULTS AND CLINICAL IMPRESSIONS (Continued)

**Gregory C. Landrum, Psy.D., DABPS**
Clinical and Forensic Psychologist
Diplomate of the American Board of Psychological Specialties
FL License No. PY0003587

cc: Fax: 1/31/17 Julie Prag Vianale, Esq.